# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

TAMI W.[1],

           Plaintiff,

    v.

ANDREW M. SAUL, Commissioner
of Social Security,

         Defendant.

Case No. 6:19-cv-1414-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller and Brent Wells, HARDER, WELLS, BARON & MANNING, PC, 474
Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204;
Lars J. Nelson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social
Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of
Attorneys for Defendant

**Michael H. Simon, District Judge.**

      Tami W. (Plaintiff) seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying her application for Disability Insurance

---

     [1] In the interest of privacy, this Opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. When applicable, this Opinion uses the same
designation for a non-governmental party's immediate family member.

Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social

Security Act (Act). For the following reasons, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193,

1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may

not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff filed an application for DIB and SSI on June 15, 2016, alleging disability beginning on November 28, 2011, due to depression, post-traumatic stress disorder (PTSD), and anxiety. AR 68, 188, 208. Plaintiff was born on October 1, 1975, and was 36 years old at the alleged disability onset date. AR 67. The Commissioner denied Plaintiff's application initially and upon reconsideration. AR 119-123, 126-131. In response, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). AR 132-33. The hearing occurred before ALJ Mark Triplett on May 14, 2018. AR 34. In a decision dated September 13, 2018, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, from November 18, 2011, through the date of decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-6; *see also* 20 C.F.R. § 422.210(a). Plaintiff seeks judicial review of that decision. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

### B.  Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
        then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
        416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
        the listed impairments, the analysis continues. At that point, the ALJ must
        evaluate medical and other relevant evidence to assess and determine the
        claimant's "residual functional capacity" (RFC). This is an assessment of
        work-related activities that the claimant may still perform on a regular and
        continuing basis, despite any limitations imposed by his or her
        impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
        416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
        proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. ALJ's Decision

The ALJ first determined that for Plaintiff's DIB claim, she met the insured status under the Act through December 31, 2016. AR 15. The ALJ then performed the sequential analysis as noted above. At step one, while the ALJ found that Plaintiff had engaged in substantial gainful activity from the period of November 28, 2011 through December 31, 2011, the ALJ also found that there had been a continuous 12-month period(s) during which Plaintiff did not engage in substantial gainful activity. AR 15-16. At step two, the ALJ found that Plaintiff has the severe impairments of anxiety disorder and affective disorder. AR 16. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404. *Id.*

The ALJ next determined Plaintiff's RFC. The ALJ concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following non-exertional

limitations: Plaintiff is able to perform work limited to simple, routine tasks, and can tolerate occasional contact with the general public. AR 18-19. At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work, noting that such work (as a deli slicer or babysitter) would exceed the restrictions of Plaintiff's RFC. AR 22-23. At step five, the ALJ considered Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert. Based on those considerations, the ALJ concluded that that there are jobs that exist in significant numbers in the national economy, including floor waxer, hand packager, and wall cleaner, that Plaintiff can perform. AR 23. Thus, the ALJ found that Plaintiff was not disabled.

## DISCUSSION

Plaintiff argues that the ALJ erred by improperly discounting Plaintiff's subjective symptom testimony and improperly discounting the medical opinion of Scott Alvord, Pys.D. Plaintiff requests that the Court credit as true the allegedly improperly discounted testimony and remand for an immediate award of benefits.

## A. Plaintiff's Subjective Symptom Testimony

The Court employs a two-step process for evaluating a claimant's testimony about the severity and limiting effect of a claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, thereby satisfying step one of the analysis. AR 19. The ALJ then determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record. *Id*. The ALJ also noted that Plaintiff received only conservative treatment for her allegedly debilitating migraines, and concluded that the objective medical evidence did not support Plaintiff's claimed limitations.[2] Each reason is addressed in turn.

---

[2] The Commissioner also asserts that the ALJ found that Plaintiff's work history undermined Plaintiff's subjective symptom testimony. The ALJ, however, merely stated the facts regarding Plaintiff's work history and did not make any finding relating to Plaintiff's work history as an inconsistency in the record or having any relation to Plaintiff's subjective symptom testimony. Accordingly, the Commissioner's argument is improper *post hoc* reasoning that this Court may not consider. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009).

### 1.  Inconsistencies with the record

The ALJ identified several "inconsistencies" between Plaintiff's testimony at the hearing or in her function reports and other evidence in the record. Plaintiff argues that this is an improper analysis of Plaintiff's character for truthfulness.

Effective March 17, 2017, the Commissioner amended the applicable regulations on how an ALJ is to evaluate a claimant's subjective symptom testimony. 20 C.F.R. §§ 404.1529; 416.929. These amendments clarified that an ALJ should not engage in a general credibility assessment of a claimant or evaluation of a claimant's truthfulness. In relevant part, these regulations provide:

> How we determine the extent to which symptoms, such as pain, affect your capacity to perform basic work activities. In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4).

The regulations require an ALJ to consider whether there are conflicts between a claimant's subjective statements and other evidence in the record. Further, subjective symptoms will be determined to diminish a claimant's capacity to work only if those symptoms can

reasonably be accepted as consistent with medical and other evidence. Accordingly, whether there are inconsistencies that create conflicts between a claimant's subjective testimony and other evidence in the record is not an improper evaluation of truthfulness.

The inconsistencies in Plaintiff's testimony cited by the ALJ include: (a) Plaintiff's purported limitations in memory; (b) her purported limitations in concentration, persistence, and pace, (c) her alleged social limitations beyond those outlined in the RFC; and (d) her stated reasons for not working.[3] Plaintiff argues that these inconsistencies do not constitute clear and convincing reasons to reject her testimony. The Court disagrees and finds that the ALJ cited substantial evidence in support of his determination.[4]

_____

[3] The first two inconsistencies were discussed by the ALJ in the section of his opinion addressing whether Plaintiff had a listed impairment and not the section relating to Plaintiff's subjective symptom testimony. The third and fourth inconsistencies were discussed by the ALJ in both sections. The Court, however, may consider inconsistencies discussed by the ALJ, even if discussed in a different section of the ALJ's opinion. *See, e.g.*, *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (finding that ALJ did not err by placing support for a step-three determination elsewhere in decision); *Nathan K. v. Saul*, 2019 WL 4736974, at *13 (C.D. Cal. Sept. 27, 2019) ("The ALJ identified two clear and convincing reasons for partially rejecting Plaintiff's symptom statements—their inconsistency with objective evidence and with some activities of daily living. Although they do not appear in the same place in the decision, there is no requirement that she structure her analysis in any particular format."). The Court can reasonably discern the ALJ's path to his decision on Plaintiff's subjective testimony. *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." (simplified)).

[4] The ALJ cited other inconsistencies between Plaintiff's testimony and the record, including Plaintiff's testimony that she became lost on the way to her hearing. AR 20. The Court declines to address whether any other inconsistencies identified by the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Even if the ALJ erred in his reasoning based on the additional examples, any error was harmless because the ALJ provided other reasons affirmed by the Court. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (affirming the ALJ's rejection of claimant's testimony where "the ALJ decision remains legally valid, despite such error").

### a. Limitations in memory

At her hearing, Plaintiff said that she had difficulty retaining information. AR 50. In her function report, she reported that her memory was affected by her impairments and that she required reminders to go places because she had to write everything down. AR 254. The ALJ found that these purported limitations in memory conflict with other evidence in the record. AR 17.

The ALJ noted that although Plaintiff reported that she required reminders to go places, she reported also that she did not need reminders to take care of personal needs and grooming, nor did she need reminders to take her medications. AR 251. The ALJ further highlighted the inconsistency between Plaintiff's alleged memory limitations and the numerous examples throughout the record of exam observations made by licensed clinical social workers, counselors, and physicians that showed Plaintiff has normal memory functioning. AR 17. Finally, the ALJ noted that, although Plaintiff's memory function during her parenting fitness exam was significantly below average during initial testing, in subsequent tests Plaintiff's memory functioning improved to average and above average levels. AR 17, citing 580. The ALJ's finding regarding the conflicts between Plaintiff's subjective testimony regarding the limitations caused by her memory functioning and the other evidence in the record was based on specific, clear, and convincing reasons. Therefore, it is a valid basis upon which to discount Plaintiff's subjective symptom testimony.

### b. Limitations in concentration, persistence, and pace

Plaintiff reported to the SSA that her impairments affect her ability to concentrate, indicating that she is unable to pay attention for longer than three minutes at a time. As with Plaintiff's reported limitations in memory functioning, the ALJ found that her reported

limitations in concentration, persistence, and maintaining pace conflicted with other evidence in the record, including Plaintiff's own reports.

In determining that Plaintiff had a moderate limitation regarding concentration, persistence, and maintaining pace, the ALJ noted internal inconsistencies in Plaintiff's reporting to the SSA. AR 17. Although she claimed to be able to pay attention for "about three minutes at a time," the ALJ pointed out that Plaintiff also reported that she "is able to finish what she starts, such as conversations, chores, reading, and watching a movie." *Id*., citing AR 254. In addition to Plaintiff's own reporting, the ALJ found that Plaintiff's alleged limitations in this area also conflict with other evidence in the record.

The ALJ noted that "upon exam, her concentration, attention, and thought content were within normal limits on the majority of occasions." *Id*. He supported this finding by citing to dozens of examples throughout the record of mental status examination results that indicated Plaintiff's functioning in those areas was normal. AR 17-18. As with her memory exams, during her evaluation for parenting fitness purposes, Plaintiff's initial test scores indicated low functioning in attention, concentration, and tracking, but improved to low average levels in subsequent tests. AR 580. The ALJ noted this improvement in his decision, as well as Plaintiff's most recent mental status examination where she was able to perform tasks that indicated an ability to concentrate consistent with "moderate limitation at most" in that area. AR 18. The ALJ's finding with respect to the conflicts between Plaintiff's subjective testimony regarding the limitations caused by her concentration, persistence, and maintaining pace and the other evidence in the record was based on specific, clear, and convincing reasons. Therefore, it is a valid basis upon which to discount Plaintiff's subjective symptom testimony.

### c.   Limitations in social functioning

Plaintiff reported to the SSA that she does not talk to anyone unless she must and that she isolates herself away from people. AR 254. She added that she does not open her shades, always has her doors locked, and checks the doors many times a day to ensure that they are locked. AR 255. At her hearing Plaintiff indicated that she generally does not leave the house unless it is to go to appointments or shop. AR 53. She stated: "I just prefer being at home . . . I just don't talk to people. I just prefer to stay in my home, in my little world." AR 54. Highlighting the inconsistency between these statements and evidence in the record, the ALJ noted that "she attends 'social groups' regularly and reported to another provider that she enjoys window shopping with a friend as a coping mechanism and she reported to yet another provider that she has a friend who she visits with regularly and goes on walks together." AR 20. The ALJ also stated that his RFC determination that Plaintiff be limited to occasional public contact is supported by the fact that Plaintiff can take public transportation regularly without issue. *Id*. The ALJ used these inconsistencies as a basis for discounting Plaintiff's subjective symptom testimony.

Plaintiff takes issue with the ALJ's determination, contending that the "minimal activities" of attending appointments and shopping do not indicate an ability to function socially in a work setting. As for attending social groups, Plaintiff says that it is clear from the record that the social groups she attended were social group therapy sessions. Finally, Plaintiff argues that taking public transportation merely demonstrates that she is capable of being in public, as there is no evidence that she interacted with the public while on the bus. Citing *Orn*, 495 F.3d at 639, she claims that the ALJ erred in failing to explain how her ability to take public transportation is transferable to a work setting.

There are two grounds for using a plaintiff's daily living activities to form a basis of an adverse credibility determination: (1) a plaintiff's activities contradict her other testimony; or (2) a plaintiff's activities meet the threshold for transferable work skills. *Id*. As such, if an ALJ finds that a plaintiff's daily living activities are inconsistent with her other testimony and provides substantial evidence in support of this finding, the ALJ need not explain how those activities may or may not transfer to a work setting.

Plaintiff's arguments that her daily activities outside of her home were minimal and that the only social groups she attended during the period in question were social group therapy sessions fail for two reasons. First, her activities contradict her statements that she is essentially homebound, and her inability to interact with and around others. The ability to take public transportation "relates to a claimant's social functioning." *Attmore v. Colvin*, 827 F.3d 872, 878 n.2 (9th Cir. 2016). Further, even assuming her only social groups were therapy sessions, her ability to attend group therapy conflicts with her statements regarding her inability to interact around people and her feelings of isolation and need to stay at home. *See, e.g.*, *Eaves v. Berryhill*, 2018 WL 6421688, at *5 (C.D. Cal. Oct. 2, 2018) (finding activities including attending group therapy, shopping, and handling finances to be inconsistent with claimed social functioning limitations of having a hard time being in public, shopping, and having increasing panic attacks); *Anderson v. Colvin*, 223 F. Supp. 3d 1108, 1128 (D. Or. 2016) (finding activities including attending group therapy and walking dogs contradicted testimony of essentially being homebound); *Vassar v. Colvin*, 2015 WL 4537582, at *10 (C.D. Cal. July 27, 2015) (finding that activities of attending group therapy and interacting on Facebook contradicted testimony that the claimant "felt isolated and experienced social withdrawal").

Second, the record does not support that Plaintiff's only social group interaction was for therapeutic appointments. Although there are many references to group therapy in the record, there is additional evidence that indicates Plaintiff was involved social groups unrelated to therapy and took part in activities outside of going to appointments or shopping during the period in question. *See, e.g.*, AR 924 (involved in church group and meeting new people); AR 925 (volunteering at elementary school); AR 926 (returned to regular attendance of church on Sundays); AR 935 (regular meetings with pastor); AR 1069 (attended Pride gathering); AR 1116 (goes to gym three times a week)).[5] This evidence supports the ALJ's determination that the record conflicts with the limitations as described in Plaintiff's testimony and statements to the SSA.

### d.   Reasons for not working

The ALJ noted that Plaintiff "alleges that she cannot work due to anxiety, resulting in getting nervous, overwhelmed, and shutting down. She testified that she stopped working due to stress with the customers and because she did not get along with the store director." AR 19. As the ALJ pointed out, however, Plaintiff's prior statements in the record regarding why she does not work or is not seeking work were not consistent with her testimony that it was caused by limiting effects of her alleged symptoms.

The ALJ cited an October 2011 counseling session, characterizing it as Plaintiff reporting that working while parenting special needs children was untenable. AR 19, citing AR 1264. Earlier that year, in April, Plaintiff reported that "people say get a job" but visiting her children

---

[5] Although the ALJ did not specifically cite to these portions of the record, the Court may cite to additional evidence that supports a reason relied on by the ALJ—the Court only may not provide a new reason not relied on by the ALJ. *See, e.g., Warren v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) ("Although the ALJ did not cite the POMS[,] . . . . [t]he Commissioner is not asking this court to invent a new ground of decision; rather, the POMS simply is additional support for the Commissioner's and the ALJ's position.").

three days a week creates a time issue for her. AR 1273. The ALJ also cited a 2016 report from a treating provider in which Plaintiff stated that she "can't get a job" due to her schedule of custody meetings. AR 19, citing AR 990. The ALJ further referenced the record to note that this schedule of meetings also caused Plaintiff to stop attending group therapy for "a while." AR 20, citing AR 1194.

Plaintiff argues that the ALJ mischaracterized Plaintiff's testimony and the evidence in the record by construing Plaintiff's reasoning for not working to be primarily related to her parenting obligations and not to her severe impairments. She argues that the assertion that working while parenting special needs children is untenable came from Plaintiff's counselor, not the plaintiff herself. She argues further that the ALJ erred in citing her reports of not being able to work due to her schedule of custody meetings as inconsistent with her testimony. Plaintiff contends that those parenting obligations were a symptom of her severe impairments and should be viewed in that regard.

With respect to Plaintiff's contention that it was her counselor who suggested in October 2011 that working while parenting special needs children was untenable, the chart note in question is worded ambiguously: "She considering agreeing with supervisor mentioning laying her off. Discussed this, *I agree that work plus parenting special needs children is not tenable*. She plans to inform supervisor that 10/31 is last day of work" (emphasis added). AR 1264. Rational arguments could be made as to whether Plaintiff did or did not tell her counselor that working while parenting special needs children is untenable. The ALJ's interpretation of the record, therefore, is reasonable and must be upheld. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 ("[I]f evidence exists to support more than one rational interpretation, the court is bound to uphold [the ALJ's] interpretation.").

Similarly, the ALJ's interpretation of the evidence in the record that Plaintiff cited parenting obligations as her reason for not working is rational. Plaintiff's testimony set forth above describing why she quit and other evidence in the record can rationally be interpreted, as Plaintiff argues, that she was dealing with stress and anxiety during the time that became too much to handle along with a job. Evidence cited by the ALJ also is consistent with Plaintiff's testimony that she could not work because her kids needed her at home. Because there are multiple rational interpretations of Plaintiff's testimony, the ALJ's interpretation is given deference. Accepting the ALJ's interpretations, the conflicts between Plaintiff's statements about her limitations causing her to quit her job and other reasons actually causing her to quit her job are another clear and convincing reason to discount her testimony provided by the ALJ.

### 2. Conservative Treatment for Migraines

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Apart from symptoms related to her severe impairments, Plaintiff also testified to experiencing debilitating migraine headaches multiple times per week that incapacitate her for the entire day. AR 54-55. She said she takes medicine for the migraines and that it helps but leaves her feeling tired and that she cannot function normally through a headache. AR 54. She

argues that such debilitating headaches, even if they happened just two times a month, would be disabling and render her unable to work. The ALJ found that the "longitudinal evidence reveals a much reduced level of subjective symptoms with only conservative treatment with medications offered." AR 20. He pointed to specific evidence in the record that indicates Plaintiff only received conservative treatment for headaches and that she did not follow prescribed treatment plans from her medical care provider. *Id.*

Plaintiff takes issue with the ALJ's observation that she reported to her medical care provider that she was having four to six headaches per week in July 2017 and received conservative treatment and then reported in April 2018 to a one time psychological examiner that she was experiencing only two headaches per week, "[d]espite her significant complaints made to her treating primary care provider regarding headaches." *Id.* Plaintiff validly asserts that it is not clear why an improved condition from July 2017 to May 2018 is a basis to reject her testimony. It is not evident, however, that the ALJ relied on this perceived inconsistency as the primary basis for his determination.

The ALJ repeatedly pointed out that Plaintiff received only conservative medication to treat the symptoms she experienced as a result of her migraine. The ALJ also noted that Plaintiff failed to return for her follow up appointment as recommended by her care provider. AR 20, citing AR 1257. "Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such a failure as a basis for finding the complaint unjustified or exaggerated." *Orn*, 495 F.3d at 638. The ALJ's specific reference to conservative treatment and Plaintiff's failure to follow her medical provider's recommendations provided a valid basis for discounting her subjective symptom testimony.

### 3.  Lack of Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's [symptoms]." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. Thus, the ALJ's consideration that the objective medical evidence did not support Plaintiff's subjective testimony was a further relevant factor that supports the ALJ's conclusion.

### B.  The Medical Opinion of Scott Alvord, Psy.D.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit and the Commissioner[6] distinguish between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2). If a treating physician's opinion is supported

---

[6] Because Plaintiff filed her application before March 17, 2017, her application is governed by 20 C.F.R. §§ 404.1527 and 416.927, and the revised rules relating to the consideration of medical opinion testimony do not apply.

by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan*, 246 F.3d at 1202; *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id*.

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631; *see also* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Dr. Scott Alvord was Plaintiff's examining psychologist. On May 2, 2018, Plaintiff underwent a neuropsychological evaluation conducted by Dr. Alvord that included a clinical interview, mental status examination, and the administration of a Wechsler Adult Intelligence Scale 4th Edition (WAIS IV) test, a Wechsler Memory Scale 4th Edition (WMS IV) test, and a trail making test. Dr. Alvord also reviewed a subset of Plaintiff's medical records provided to

Dr. Alvord by Plaintiff's counsel. AR 1282. Dr. Alvord opined that Plaintiff met the criteria for

PTSD, Borderline Personality Disorder, and Major Depressive Disorder. AR 1284. He further

opined that Plaintiff would "primarily struggle to maintain consistency especially around

authority figures or coworkers who are likely trigger her" and that her borderline personality

disorder "will compromise her ability to manage even simple stress on a daily basis and again

maintain consistency." *Id*. Dr. Alvord completed a "check-form" box to evaluate Plaintiff's

ability to do work-related mental activities and found marked limitations in Plaintiff's ability to

understand and remember complex instructions, carry out complex instructions, make judgments

on complex work-related decisions, interact appropriately with the public, interact appropriately

with supervisor(s), interact appropriately with coworkers, and respond appropriately to usual

work situation and to changes in routine work setting. AR 1287-88.

The ALJ rejected the opinion of Dr. Alvord, who is considered an examining physician,

in favor of the opinions of Drs. Joshua Boyd and Irmgard Friedburg, who are non-examining,

non-treating physicians. Thus, the ALJ was required to provide specific and legitimate reasons

supported by substantial evidence. *Roberts*, 66 F.3d at 184. The ALJ provided the following

reasons for discounting Dr. Alvord's opinion: (1) inconsistencies between Dr. Alvord's opinions

and his examination findings; (2) Dr. Alvord relied on Plaintiff's subjective description of her

symptoms and limitations; and (3) inconsistencies between Dr. Alvord's opinions and the

evidence in the record indicating Plaintiff's normal mental functioning.

### 1.  Inconsistency between Dr. Alvord's Opinions and his Examination Findings

The ALJ found that Dr. Alvord's opinion that Plaintiff would have difficulty maintaining

consistency conflicted with Dr. Alvord's notes that "reveal the claimant reported balancing her

children's visitation with work during a period in which the claimant reported that she was 'not

fast enough' at work." AR 22. These notes do not make such a revelation. They state only that

Plaintiff "last worked at Albertsons three years ago" and that Plaintiff suggested the job ended

because she could not handle the stress and "wasn't fast enough." AR 1281. The evidence thus

supports that Plaintiff's job at Albertsons ended before she lost custody of her children. *See* AR

44 (Plaintiff acknowledging during her hearing that she quit Albertsons in 2011); AR 1281 (2011

counseling sessions indicating Plaintiff had recently quit her job at Albertsons); AR 969 (noting

in February 2016 that Plaintiff had "recently" lost custody of her children). Therefore, substantial

evidence does not support the ALJ's assertion that Plaintiff reported having to balance visiting

her children with work and this was inconsistent with Dr. Alvord's findings.[7]

The ALJ concluded that there was another inconsistency between Dr. Alvord's opinions

and his examination findings: "Moreover, as Dr. Alvord reviewed Dr. Wilson's 2016 findings,

Dr. Alvord should have known that the claimant herself says her most desirable aspect of her

personality is being a 'tenacious advocate' for her children, which significantly undermines

Dr. Alvord's conclusions." AR 22. The ALJ did not provide any further explanation of this

conclusory statement, nor did the ALJ point to any specific evidence supporting his assertion that

Dr. Alvord's conclusions were inconsistent with his knowledge that in 2016 Plaintiff described

herself as a "tenacious advocate" for her children. The ALJ did not satisfy the substantial

evidence requirement for considering medical opinion evidence. *Reddick v. Chater*, 157 F.3d

715, 725 ("The ALJ must do more than offer his conclusions. He must set forth his own

interpretations and explain why they, rather than the doctors', are correct.").

### 2.  Reliance on Plaintiff's Subjective Complaints

The ALJ also discounted Dr. Alvord's opinion because the ALJ found that it relied too

heavily on Plaintiff's subjective descriptions of her symptoms and limitations. The ALJ pointed

---

[7] Even if Plaintiff worked at Albertsons in 2015, that fact would not support the ALJ's finding because it was before Plaintiff lost custody in 2016.

to Dr. Alvord's limited review of Plaintiff's medical records as evidence that Dr. Alvord relied largely on Plaintiff's subjective complaints. AR 22. The ALJ noted that Dr. Alvord only reviewed the chart notes of one counselor who treated Plaintiff in 2010 and 2016 (more accurately, 2010, 2011, and 2016), and the comprehensive parenting fitness evaluation performed by Dr. Chris Wilson in 2016. Thus, Dr. Alvord was deprived of many examinations and opinions in the record describing Plaintiff's normal test results, behavior, affect and other relevant information that might have provided insight other than Plaintiff's subjective testimony.

Plaintiff argues that the ALJ's conclusion that Dr. Alvord improperly relied on Plaintiff's subjective testimony is not an appropriate basis to reject a psychologist's conclusions based on a neuropsychological evaluation. Plaintiff cites *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017). In *Buck*, the Ninth Circuit reiterated that "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Id.* at 1049 (quoting *Morgan*, 169 F.3d at 602). The Ninth Circuit explained, however, that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id.* This is because "[p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Id.* Thus, the Ninth Circuit held that when an examining mental health practitioner only partially relies on a claimant's self-report and also relies on other measures such as a clinical examination and a mental status evaluation, an ALJ errs by discounting the practitioner's opinion as improperly based on a claimant's subjective testimony. *Id.*

Dr. Alvord performed a mental status evaluation of Plaintiff and conducted psychological testing (administering WAIS-IV, WMS-IV, and trail making tests). "These are objective measures and cannot be discounted as a 'self-report.'" *Id.* In his opinion, however, Dr. Alvord specifically stated: "Her psychiatric symptoms are considered severe and have likely been present at their current level for the past 3-5 years. This is based on her description of symptoms, her treatment history, her ability to maintain a job, and her description of her social history." AR 1284. Thus, Dr. Alvord specifically indicated that his opinion was to a large extent based on Plaintiff's self-reports, and not the objective measures that were included in Dr. Alvord's examination. With respect to the check-box form, there is no indication whether those opinions are based on the objective measures and Plaintiff's subjective testimony, or largely Plaintiff's subjective testimony. In light of this statement by Dr. Alvord in his written report, however, it was a rational conclusion by the ALJ to determine that Dr. Alvord's opinions in the check-box form were similarly largely based on Plaintiff's subjective testimony. Under these circumstances, it was not error for the ALJ to discount Dr. Alvord's opinion on this basis.

### 3.   Inconsistency Between Dr. Alvord's Opinion and other Evidence in the Record

Inconsistency with the record is a valid reason for discounting a medical opinion. *See* C.F.R. 20 § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"). The ALJ found that Dr. Alvord's opinion conflicted with multiple mental status examinations performed throughout the period at issue by multiple treating providers that showed normal results. AR 22. Plaintiff argues that the ALJ failed to cite to any evidence in the record to support this finding. Although the ALJ did not cite specific evidence to support this finding in that section of his decision, he offered ample evidence in his formulation of the RFC, where he cited to dozens of specific examples throughout the record where mental examinations showed normal results. AR 17-18.

Within the RFC formulation, ALJ noted that there are numerous examinations and test results in the record showing mostly normal results relating to interpersonal functioning, concentration, attention, and thought content, and only a few that show abnormal results. AR 17-18. The ALJ did not "cherry pick" only positive chart notes and test results, but specifically acknowledged the full record in weighing the conflicting medical evidence. This rational finding is entitled to deference. As explained by the Ninth Circuit:

> First, the ALJ concluded that Dr. Zipperman's opinion regarding Ford's functioning was inconsistent with objective evidence in Ford's record. Substantial evidence supports this conclusion. For instance, Dr. Zipperman concluded that Ford was highly distractible and her ability to concentrate was limited, but other mental health professionals found that Ford had normal concentration and thought processes. Although Ford argues that the ALJ failed to recognize the inherently variable nature of mental illness, the court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.

*Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (simplified).

Because the ALJ has provided two legally sufficient reasons to discount Dr. Alvord's opinion, the error with respect to the first reason provided by the ALJ is inconsequential to the non-disability decision and therefore harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is affirmed.

**IT IS SO ORDERED**.

DATED this 6th day of November, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge